AQUA-DYNE V. CRAVENS-POCOCK 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-345-CV





AQUA-DYNE ENGINEERING, INC.,



 APPELLANT


vs.





CRAVENS-POCOCK, INC. A/K/A COOK-CRAVENS, 


WARREN & CO., INC., OR CRAVENS, WARREN & CO.,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NO. 436,679, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 Appellant Aqua-Dyne Engineering, Inc. ("Aqua-Dyne") asserts in a single point
of error that the district court erred when it rendered judgment in favor of appellee Cravens-Pocock, Inc., a/k/a Cook-Cravens, Warren & Co., Inc., or Cravens, Warren & Co. ("Cravens"),
an agent of Western Alliance Insurance Co. ("Western"). We will affirm the judgment.



BACKGROUND


 Aqua-Dyne is an engineering and manufacturing company whose main product is
high-pressure water guns used in construction blasting. Aqua-Dyne was named as a defendant
in a California lawsuit brought by William Gobert, an employee injured on a construction site
while using a high-pressure water gun. Cravens, the local agent in Texas who sold Western's
policy to Aqua-Dyne, informed Aqua-Dyne that coverage was excluded by a "products hazard"
clause in the policy; therefore, Western had no duty to defend Aqua-Dyne in the California suit. 
Aqua-Dyne then hired its own defense counsel. Apparently, the California claim against Aqua-Dyne has been settled, and Aqua-Dyne has also settled with Western.

 Aqua-Dyne sued Cravens for failure to inform Western about the service of citation
in the lawsuit on Aqua-Dyne, seeking to recover the costs incurred in defending the California
case. Cravens defended upon the ground that it owed no duty to report this service of citation on
Aqua-Dyne when the California petition contained claims against Aqua-Dyne that were clearly
excluded by the insurance policy. After the parties jointly submitted this issue of law to the Texas
trial court for a ruling, the court concluded there was no coverage under the policy and thus no
duty to defend owed by Western. Cravens then moved by special exception to dismiss Aqua-Dyne's suit on failure to state any viable legal claims. (1) The court sustained the special exception
and granted Aqua-Dyne leave to amend its petition. When Aqua-Dyne refused to amend, the
court rendered judgment that it take nothing from Cravens.

 Aqua-Dyne asserts the trial court erred when it ruled that Western had no duty to
defend Aqua-Dyne, its insured, in the California suit. This single question of law is the sole
matter before us on appeal.



DISCUSSION


 Western's policy with Aqua-Dyne contained exclusion G-304, which states,



It is agreed that such insurance as is afforded by the Bodily Injury Liability
Coverage and the Property Damage Liability Coverage does not apply to bodily
injury or property damage included within the Completed Operations Hazard or the
Products Hazard.




The policy elsewhere defines "products hazard" as "bodily injury and property damage arising out
of the named insured's products." Finally, the term "named insured's products" is defined: 
"[G]oods or products manufactured, sold, handled, or distributed by the named insured . . . ."

 Aqua-Dyne argues that this exclusion does not encompass an allegation made in the
petition filed in the California suit. Namely, it contends that the petition contains a claim that
Aqua-Dyne negligently consulted with the injured plaintiff's employer about a water gun
manufactured by a competitor of Aqua-Dyne. Such a claim, Aqua-Dyne asserts, would be for
bodily injury that did not arise out of the "named insured's products." It further asserts that
Cravens had knowledge of facts supporting a claim of negligent consultation and should therefore
be held liable for its failure to inform Western that Aqua-Dyne had been sued.

 Any knowledge that Cravens may have had of the factual background of the
California suit and any legal opinions it may have drawn from these facts are irrelevant. When
a court determines whether an insurer had a duty to defend its insured, it looks solely to the
allegations in the suit against the insured. It may not consider either the truth or falsity of such
allegations or the parties' knowledge of or belief about the true facts behind the allegation. 
Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. 1965). In
accordance with the supreme court's guidelines, we will look only at the claims in the California
petition to determine if such claims fell within the products exclusion.

 The petition describes Aqua-Dyne, NLB Corporation, and twelve anonymous
"Does" as parties "engaged in the business of manufacturing, designing, assembling, modifying,
selling, distributing, retailing and supplying high pressure water guns," alleging that such
defendants did in fact engage in such activity with respect to the water gun that injured the
plaintiff. The petition further alleges that the plaintiff's employer selected a water gun from
materials made available by these defendants, and that this selection "was made in collaboration
with and in consultation with agents and employees of" the defendants. Aqua-Dyne argues this
reference could be interpreted as a claim that it negligently consulted with the plaintiff's employer
about a water gun that actually was supplied by NLB or one of the Doe defendants, rather than
being Aqua-Dyne's own product. In this event, the claim for recovery against Aqua-Dyne in the
California suit would not come within the products hazard exclusion and Aqua-Dyne would be
entitled to be defended. Considering the petition as a whole, we conclude as a matter of law that
no such reasonable interpretation is possible.

 Each reference to Aqua-Dyne in the petition occurs along with NLB and the twelve
Doe defendants. Aqua-Dyne and NLB were themselves "Does" in the plaintiffs' original petition;
they were only identified in the amended petition that is in the record before us. The plaintiff did
not expressly allege which defendant had actually manufactured and sold the water gun to his
employer, or which combination of defendants had made the parts that made up the gun, but
instead made similar allegations as to each defendant subject to proof. Only a strained reading
of the petition permits the conclusion that the plaintiff is attempting to allege that Aqua-Dyne
consulted with the employer about the use of a water gun made by another of the named or
anonymous defendants. Even if we assume that such an interpretation is possible, however, Aqua-Dyne faces an insurmountable obstacle in the plain language of the petition.

 Each factual description of Aqua-Dyne's identity and conduct noted above is set
out under the "First Cause of Action" section of the petition. The actual theory of liability is
found in paragraph 13 of this section, where the defendants are alleged to have "negligently and
carelessly supplied said high pressure water gun and its component parts to [the plaintiff's
employer]" (emphasis added). The second cause of action incorporates the factual allegations in
the first section and contains a strict liability complaint against all the defendants based upon a
defective product, the water gun. The third cause of action alleges the defendants "negligently
and carelessly manufactured, designed, assembled, modified, inspected, sold, distributed and
supplied said high pressure water gun and its component parts" (emphasis added). The final cause
of action concerns only the plaintiff's employer.

 The petition does not contain any allegation that anyone negligently consulted with
the plaintiff's employer. Rather, the only reference to consulting is in the factual background
describing how the employer selected and bought the water gun in question. The actual causes
of action involve (1) the alleged negligence of the water gun's manufacturer in the gun's assembly
and distribution to the employer and (2) the defective nature of the gun itself. Nowhere in the
long recitation of the manufacturer's conduct is "consultation" mentioned. The allegations in the
petition clearly fall within the "products hazard" exclusion. (2)

 Western had no duty to defend its insured in a suit alleging facts excluded from
coverage under its policy. Fidelity & Guar. Ins. Underwriters v. McManus, 633 S.W.2d 787, 790
(Tex. 1982). Therefore, Cravens had no duty to inform Western about the service of citation on
Aqua-Dyne and cannot be held liable for the costs incurred in defense of the California suit. We
overrule Aqua-Dyne's point of error and affirm the judgment of the district court.



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: February 24, 1993

[Do Not Publish]
1.   Cravens filed both a motion for summary judgment and a motion for judgment. The
trial court treated both as special exceptions objecting to Aqua-Dyne's failure to state any
claim. Neither party complains about the court's procedural decisions in this case.
2.   Aqua-Dyne conceded at oral argument that an allegation that it consulted with the
plaintiff's employer about Aqua-Dyne's own product would fall within the exclusion. 
Therefore, it asks this court to (1) interpret the petition to allege negligent consultation where
the paragraphs containing the theories of liability do not mention this conduct, and (2)
separate the manufacturing and consulting defendants from each other, with Aqua-Dyne
falling in the latter category, where the petition does not itself separate these actions. We
decline to do so.